# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

### MARCH TERM, 1898.

---

SCARLETT & SCARLETT et al., appellants,

*v.*

MICHAEL LINCKELS et al., respondents.

[Filed June 20th, 1898.]

1. The power to sell lands contained in the declaration of trust in this case authorized the grantee of the power to make sale not only until the mortgages on the lands were fully paid, but also until the beneficial owners made a written request that he convey the lands to them.

2. It is unnecessary to decide whether the record of the declaration of trust was constructive notice of its provisions, and no opinion is expressed on that subject.

777

On appeal from a decree advised by Vice-Chancellor Emery, who delivered the following opinion :

This is a bill filed by the complainants to quiet the title to land, in Essex county, conveyed to them on January 12th, 1895, by one Frederick W. Canfield, who then held the legal title. The land conveyed was a small building lot, included in a large tract of land laid out by Canfield and the defendants for the purpose of selling in lots for building sites. Complainants paid to Canfield $450 in cash for the lot, and immediately commenced the erection of a house thereon for their residence, which they completed, or nearly so, by April 1st following, at an expense of about $3,000, the purchase and expenditure being made without any actual notice on their part of any claim of defendants to the land. The bill alleges legal title, and also relies on an equitable estoppel against the assertion by defendants of any equitable title in the land.

Defendants set up an equitable title founded on a declaration of trust signed by Canfield and themselves, by which Canfield declared that the lands were purchased with the funds contributed by each in certain proportions and were so held. The declaration further contained a power of sale to Canfield, and the contention of the defendants, in relation to the effect of the declaration of trust and power, is that Canfield's power to sell had expired, and that his conveyance therefore passed only his (Canfield's) legal interest in the premises, leaving their equitable interests undisturbed. This declaration of trust, dated July 15th, 1892, was acknowledged and proved March 28th, 1893, and recorded December 22d, 1893, in the book of deeds for Essex county. Defendants also claim that on the facts of the case there is nothing to estop them from setting up their title to the lands. Complainants claim that the declaration of trust was not constructive notice, for the reason that it was a paper not required or authorized to be recorded as a deed or conveyance.

I will indicate briefly the conclusions I have reached upon these questions, leaving a fuller statement and opinion to be filed hereafter, if desired.

*First.* The declaration of trust was not a deed or conveyance of lands within the meaning of the registry laws, and its record was not, therefore, constructive notice. While the registry laws are to be liberally construed for the purpose of attaining their objects, yet the effect of the record as constructive notice is so far-reaching that it should not be given to any documents upon which the statutes have not conferred this effect. The declaration of a resulting trust is certainly not a conveyance of lands, nor is it required to be by the deed. It is merely evidence of the resulting trust, and the trust may exist without any writing at all, whether under seal or otherwise.

The statute (*Gen. Stat. p. 853 § 4, tit.* "*Conveyances* ") authorizes the acknowledgment of "any deed or conveyance of lands," &c., and section 25 authorizes the clerk to record "all deeds and conveyances of lands which are acknowledged or proved according to law." The test of the right to record under these sections is whether the title to lands is transferred by the deed. *Wells* v. *Wright, 7 Halst. 131.* If the title is transferred by the deed, then it may be recorded, and is notice of a trust declared in the deed upon which it is transferred. But the declaration of a resulting trust is not a grant or transfer of an estate in lands (*1 Perry Trusts § 81*); nor do the recording acts include such trusts or other purely equitable rights or liens. *Harvey* v. *First National Bank, 7 Dick. Ch. Rep. 697, 708.* The legal title in the present instance was not by this declaration of trust conveyed or transferred by Canfield, but remained after the declaration of trust where it was before.

*Second.* By the true construction of the power of sale, Canfield's power of sale under this declaration of trust continued until the conveyance to defendants of their respective interests. This conveyance to themselves of the legal title to their respective interests the defendants had the right to require Canfield to make, by a written request to him, but they had no right to make this written request until after the mortgages then on the property, and for which Canfield was personally responsible, had been paid. The contention of defendants on this point is, that the power to sell ceased at once, after the mortgages had been in

fact paid.    My view of the construction is different, but the construction of the power in this respect is, to say the least, doubtful and ambiguous on the face of it. And a practical construction was put on the power by all of the parties by allowing the title to stand in Canfield, after the mortgages were paid, and allowing him to make several conveyances of lands sold afterward, but to convey afterward lands sold before.    Such acts may be resorted to to determine the construction, if it is doubtful or ambiguous on its face. And I think Canfield's evidence also establishes that the title was allowed to remain in him, for the purpose of sale, by the express agreement of Scarlett & Scarlett, and the acquiescence of defendant Larter.

As to the claim of the defendants, that the exercise of the power of sale by Canfield was illegal, because the price obtained was below the price fixed in the power, this evidently, as it seems to me under the declaration of trust, is altogether a matter of accounting, and does not affect the power to sell.    Nor, as a matter of fact, have the defendants established that the price fixed was below the " map prices " refered to in the articles.

*Third.* The facts in this case show, in my judgment, a clear case of estoppel against the defendants from setting up their alleged equitable title to the lands by reason of Canfield's lack of authority to convey.    After the payment of the mortgages, and up to the time of the conveyance to complainants, the evidence shows that one Bock was continued by Canfield, and held out as the agent for the sale of these premises, under circumstances which charged all of the defendants with notice that lots on the tract were being offered for sale and sold by him for the benefit of all the defendants.    The purchase-money of several lots sold afterward was actually received, and, as Canfield swears, divided among the parties, and a division made, after the receipt of complainants' money, by Canfield, through Scarlett & Scarlett, seems to have included the purchase-money for complainants' lots.    The sales of lots were made mainly for the purpose of building, and, in my judgment, the whole situation, as disclosed by the evidence, was such as to charge all of the defendants with notice that Canfield, after the payment of the mortgages, was

continuing to make sales of the lots for their common benefit. It was manifestly a convenience in disposing of the lots that the title should continue to remain in Canfield for this purpose, and so far as Scarlett & Scarlett are concerned, I think the express agreement between Canfield and them was that it should so remain. Larter also, in my judgment, in view of his continued receipt from Canfield of the dividends of money arising from sales, and under the other circumstances of the case, was charged with notice that sales of lots, for the purpose of building, were being made after the mortgage was canceled.

At the argument defendants' counsel disclaimed any intention to take from complainants the benefit of the improvements, but no such disclaimer is made in the answers, nor do I think that this case should be disposed of on the theory that if the defendants, on the present evidence, are not decreed to be estopped from claiming the benefit of complainants' improvements and of the purchase-money paid to Canfield, such estoppel still remains to be asserted in partition or some other proceedings. This is a bill to quiet title under the act of 1870 (*Gen. Stat. p. 3486*), and by the sixth section of this act the final decree in the cause " shall fix and settle the rights of the parties in said lands, and the same shall be binding and conclusive on all parties to the suit." Decree in this suit, therefore, should be made on the basis of disposing of all legal and equitable rights of the parties, and in my judgment, upon the whole case, the defendants have not, nor has either of them, any right, title or interest, legal or equitable, in the premises in question, and I will so advise.

*Mr. Frederic W. Ward*, for the appellants.

*Mr. Francis J. Swayze*, for the respondents.

The opinion of the court was delivered by

VAN SYCKEL, J.

The respondents, who were complainants below, filed their bill to remove a cloud from title and to compel appellants to convey any interest which they might have in the lands in controversy.

These lands were conveyed by Laura Smith and the Ticheners to Frederick W. Canfield, July, 1892, in fee.

At the same date Canfield executed a deed declaring that he held said lands in trust for Scarlett & Scarlett and others. The deed contained a power of sale by Canfield, and an agreement to convey a certain part of said lands to him.

This declaration of trust was recorded December 22d, 1893.

In January, 1895, Canfield conveyed the premises to Linckels, who had no actual notice of the deed of trust.

The clause in the declaration of trust which relates to the power of sale is as follows :

"And I, the said Frederick W. Canfield, for myself, my heirs, executors, administrators or assigns, covenant and agree with the said Scarlett & Scarlett, incorporated, its successors and assigns, and the said Roland Larter, his heirs and assigns, that after the said mortgage debts are fully paid and satisfied, I will, upon their written request, convey to them respectively, at their expense, by good and sufficient deeds, their respective undivided interests in whatever lands may remain unsold or uncontracted for; but the said Frederick W. Canfield, his heirs, executors, administrators or assigns shall not be required to make the said conveyance or conveyances until the said mortgage debts are fully paid, and, in the meantime, the said Frederick W. Canfield, his heirs, executors, administrators and assigns shall have full power and authority to sell and convey the said premises to purchasers, accounting for the proceeds thereof, *at prices not less than map prices, except with the consent of one other member to this agreement.*"

This agreement requires Canfield to convey to the appellants after the mortgage debts are paid, upon their written request to him to do so, but it is also expressly provided that Canfield shall not be required to make the said conveyance to appellants until the mortgage debts are fully satisfied, and that in the meantime the said Canfield shall have full power and authority to sell the lands.

In our judgment, the true construction of this provision is that it gave to Canfield the power to sell not only until the mortgage debts were paid, but after such payment and until the appellants made a written request upon Canfield to convey to them. The words "in the meantime" require the concurrence of two events to terminate the authority to sell, first, the satis-

faction of the mortgages on the premises, and second, the written request of appellants to convey to them.

No such written request was made, and therefore Canfield did not exceed his authority in conveying to the respondents.

We agree with the vice-chancellor that the sale under this power is not voidable because the price was less than the map price. That is a mere matter of accounting between the parties to the trust deed, and besides, it does not appear that the price paid by respondents was inadequate.

Admitting that the respondents had notice of the declaration of trust, their title is good, and it is unnecessary to consider whether the record of the declaration of trust was constructive notice to them of its provisions. Upon that question no opinion is intended to be expressed or indicated.

The decree of the court of chancery should be affirmed.

*For affirmance*—COLLINS, DEPUE, DIXON, GARRISON, GUM-MERE, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, KRUEGER, NIXON, VREDENBURGH—14.

*For reversal*—None.